Good morning, Your Honors. Assistant State's Attorney Christine Cook. On behalf of the people, I'd be requesting 15 minutes for argument. Thank you, Counsel. Mr. Oman, you may proceed with your argument. Morning, Your Honors, and may it please the Court. The public defenders in this case scrambled at the 11th hour to put together a murder case, and in doing so they failed to object to inadmissible testimonial hearsay, and also conducted the investigation necessary to form trial strategy, only after jury selection had been completed. We ask this Court to reverse the decision of the lower court for two reasons. First, this Court should remand for third-stage post-conviction proceedings, because Mr. Dixon made a substantial showing that the out-of-court statement was inadmissible testimonial hearsay, violating both Dixon's right to confrontation and his right to effective assistance of counsel. Second, this Court should remand for a new trial, because the public defenders also were ineffective in failing to ask gang-biased questions during jury selection. Returning to my first contention, Mr. Dixon made a substantial showing that the out-of-court statements were inadmissible testimonial hearsay. Now, even though there was an evidentiary hearing in this case, it's important to note that this particular claim was dismissed at the second stage, and it's not subjected to the third-stage evidentiary hearing. Now, that's important in two respects, because, one, even though the public defenders testified, they didn't testify with respect to this issue. And second, it's important with respect to the standard of review, because it's a second-stage dismissal, the burden on Mr. Dixon was only to make a substantial showing of a constitutional deprivation, and this Court's review is de novo. The statement by Mr. Jones in this case was inadmissible for two independent reasons. First, because it was hearsay, and second, because he was not cross-examined, and it's a Confrontation Clause violation pursuant to Crawford. With respect to hearsay, the only hearsay argument advanced by the State in the trial court and in its briefs is that the statement was an excited utterance. But under the case law, it plainly was not an excited utterance. And the reason for that is because it was not made while the excitement of the event predominated, which is the standard set forth by the Illinois Supreme Court in People v. Williams. Illinois courts look at several factors to determine whether the excitement predominated at the time that the statement was made, four factors in particular, and none of the four factors indicate that the statement was an excited utterance. The first factor is the amount of time elapsed, and the amount of time in this case is significant. This isn't what you would think of as an excited utterance prototypically, where something bad happens and somebody blurts out what happened. There was a gap of two, two-and-a-half hours between the incident in this case and the actual statement to the police officers in the hospital. Were the, on the first problem, on the two-and-a-half hours, was he not unconscious when they beat him on the street? And then he came, and the police officers came and talked to him there, but they couldn't. Then they called the ambulance, and he went to the hospital. So this two-and-a-half hours elapsed time was during a period of time where he was possibly unconscious. Is that correct, or is that incorrect? Well, it's correct to the extent that he was unconscious when the police responding to the scene came. They were not able to interview him at that time because he was unconscious. They called for an ambulance, and EMTs came to take him away. It's not correct at all to say that he was unconscious for two-and-a-half hours. Once the EMTs came and took him to the hospital, Mr. Jones was out of the police officer's office that entire time. And the information attached to the petition in this case indicates that he was, in fact, awake and responsive to personnel. For example, which brings me to the second factor, which is the presence of intervening circumstances. There were numerous intervening circumstances because the record indicates that he was awake, conversing with EMTs, conversing with personnel at the hospital based on the records attached to the petition. For example, it's clear from those records that he awoke in the ambulance. He spoke with the EMTs in the ambulance. He spoke with medical personnel at the hospital. And at some point, he was sedated before he had surgery on his leg, which goes to the extent to which he was excited by the time he spoke to the police officers. He told medical personnel… I don't think that's true. I'm sorry, Your Honor? Are you suggesting that the police officers should have jumped into the van? No, I'm suggesting that it doesn't matter with respect to the legal standards. No, he was being taken care of. I'm sorry? Hospital personnel are trying to save his life? That's correct. Are you suggesting at that stage the police officers should have walked in and said, hey, we've got to ask you questions? I'm not suggesting that. I'm suggesting that as a matter of law, it doesn't matter. The question is whether by the time he eventually did speak to police officers, two and a half hours later, was he excited? Did the excitement of the initial event predominate? And the record cannot be any more clear that he was not. Among other things, he spoke to medical personnel and told them that he had used heroin, that he had a history of seizures, that he can't remove his left earring, that he had no family in the area. He signed a Chicago Fire Department form agreeing to treatment, agreeing that he would pay for treatment. These are not things done by an excited person who the excitement is predominating. And they're certainly not things done by an unconscious person in reference to Your Honor's question. And although the state makes this claim in its brief, it doesn't cite anything in the record indicating that that's true. On the contrary, everything in the record indicates that it's not true. The third factor that courts look at to determine whether it's an excited utterance is demeanor. And again, there's nothing in the record to indicate that the declarant's demeanor when he spoke to the police officers was excited. In light of everything that we already know, including the fact that when he arrived at the hospital, they took his vital signs, his blood pressure was normal, his heart rate was normal, his breathing was normal, things that would be associated with excitement had subsided. And this was two hours before he even spoke to the police officers. By the time he spoke to them, it was a calm interview. And the fourth and final factor that Illinois courts look to is whether the statements were spontaneous or whether they were in response to questioning. And again, the record is clear that the statements in this case were in response to questioning by police officers. Again, I'm not suggesting the officers did anything wrong, and they didn't. They were doing their job. They did what they should have done. All I'm saying is that it doesn't meet the test for excited utterance. I think that's clear on this record. Now, there's also a second independent reason why the statements weren't admissible, and that's because they were testimonial statements under Pupil v. Crawford, Davis, Stackley, all the controlling authorities indicate that statements like this made to police officers hours after an event occurred in the course of an investigation are classic testimonial statements that are inadmissible without cross-examination. The state argues in its brief forfeiture by wrongdoing, but again, the facts of this case do not support the argument. Forfeiture by wrongdoing requires specific intent to prevent the victim from testifying with respect to some other proceedings against the defendant. We don't have any of that here. We don't have requisite intent. This Court already found on direct appeal, and the state argued in its summation that the purpose of this was gang retaliation. They were trying to punish him. There was no foresight. There was no looking towards some other proceedings. In fact, there was another proceeding against the defendant. To the extent there was another proceeding at all, it involved some person named Little Tony, and it has nothing to do with the defendant in this case. Now, the various policy arguments in favor or against forfeiture by wrongdoing were argued extensively in Giles, the United States Supreme Court case that resolves this issue, and the Court rejected most of the state's arguments and focused forfeiture by wrongdoing very narrowly on a class of defendants who intended to prevent a person from testifying against them in another proceeding. There's no facts to support that in this case. Therefore, the Crawford claim is a valid one. We also have to look to prejudice under the Crawford standard, which was articulated by the Illinois Supreme Court in People v. Stoeckle. And the rule is that Crawford violations warrant reversal unless the state can show that the improperly admitted evidence did not contribute to the jury's finding of guilt beyond a reasonable doubt. And you can't say that in this case. There was a large amount of evidence indicating that the beating occurred, that the victim died six days later as a result of a bleeding spleen in the hospital. But there's very little evidence implicating Dixon in the offense itself. In fact, there's two pieces of evidence, one of which is Mr. Jones' statement, which should have been excluded. The other piece of evidence is a custodial statement by the defendant that was made after 50 hours in custody. This issue was raised on direct appeal, and this Court found that was admissible. But there's a large difference between saying a statement is admissible and a statement has very much weight. In fact, it was crucial for the state to have something supporting the confession because of the circumstances under which it was delivered. In this case, what they supported it with was the statement of Mr. Jones, which was inadmissible. Without that statement, they're left with just the highly questionable statement tying Mr. Dixon to the offense. And in fact, even presented with the inadmissible testimony, the jury in this case did not quickly convict a first-degree murder. They sent a note back to the judge and said, could we find him something guilty of something less? They asked whether to consider for a long time whether even with the inadmissible evidence, whether the evidence was sufficient to convict. So therefore, without that inadmissible evidence, certainly this Court cannot say under Stoeckley that the improperly admitted evidence did not contribute to the jury's finding of guilt beyond a reasonable doubt. And for the same reasons, there's prejudice under the Strickland standard because, again, the separate element of this is ineffective assistance of counsel for failing to present this argument at trial and say, no, it's not an excited utterance, it's hearsay. This should be kept out. Turning to my second contention, the videotaped confession, you're saying that that should be inadmissible? No. This issue was previously litigated by this Court on direct appeal. We're not going to argue that again. This Court had determined that it was admissible. But there's a separate question between whether evidence is admissible and how much weight the jury should afford to the evidence. So while probably in a close case, given the 50 hours of confinement here, this Court has previously held that the statement was admissible. That doesn't mean that it's very strong evidence of guilt. Of course, as Your Honors are aware, numerous cases of people being wrongfully convicted, they had given statements under circumstances less egregious than these. So it's admissible. It's evidence of guilt. But it's not strong evidence. It would need to be bolstered by something else. And with the exception of the inadmissible testimonial hearsay statement, there's not one other piece of evidence in the record corroborating this questionable statement. Turning to my second contention, this Court should remand for a new trial because the public defenders were also ineffective for failing to ask gang bias questions during And I'd just like to touch on this only briefly. Though there was a third stage of an entry hearing and the public defenders did testify and offer a strategy, the strategy explanation that they offered was objectively unreasonable, which is the test under the first prong of Strickland. Both of the public defenders essentially testified that gangs didn't have anything to do with our defense. And we would submit that that's not good enough because gangs certainly had everything to do with the state's case. And they couldn't have made that any clearer when they said at the very beginning of the opening statement, quote, ladies and gentlemen, this case is about gang retaliation, they told the jury. It's about how the streets of the Chatham neighborhood in the city of Chicago. Ben Jones, Jr. made the mistake of disrespecting another gangster disciple, gangster disciple just like the defendant. This continued throughout the opening and in the summation where the state emphasized again that Jones was beaten by Dixon and his fellow gangster disciples or alternatively his tag team of gangster disciples. So it's gang, gang, gang throughout the extent of the state's argument. Of course, the defense knew this. And in fact, they eventually filed after jury selection was completed a motion eliminated to exclude the gang evidence. And now they come in at the evidentiary hearing and say, well, our strategy all along is that it wasn't about gangs. Well, you couldn't have even have known to the extent to which it would have been about gangs because you didn't even file your motion, which the trial court team termed an 11th hour motion accurately, until after you had already selected the jury. It's incumbent upon the defense to complete its investigation, to file necessary motions, to file a motion to suppress the inadmissible statement, to file a motion with respect to the gang evidence before jury selection so that you could formulate an intelligence defense strategy before conducting voir dire and deciding important things like whether you're going to ask gang biased questions during voir dire. With respect to prejudice, the Illinois Supreme Court has repeatedly emphasized that gang bias is prevalent among potential jurors, especially in metropolitan areas like Chicago. The central aspect of this case is gang retaliation by gangster disciples. It's perfectly reasonable to assume out of a large pool of people coming in to be selected for a jury, at least some of those people are going to be biased against gangs in general, maybe even gangster disciples in particular. And in fact, the public defenders in this case admitted that they had asked gang biased questions in other cases. And in those other cases, potential jurors had said to them, yes, I do harbor gang bias and they were struck for cause. But as the circuit court noted in this case, we don't know whether anyone on that jury harbored gang bias and whether that played any role in their decision to convict Mr. Dixon. And the Illinois Supreme Court cases emphasizing the extent of gang bias are Strain and Pupil v. Smith. So for all these reasons, this court should remand to the circuit court, first, for a third stage of an entry hearing on the first issue concerning the testimonial hearsay, and second, for a new trial with respect to the gang bias and effective assistance issue. Thank you. Thank you. Thank you. May it please the court, counsel. Coulda, woulda, shoulda. The ever-familiar refrain of post-conviction attorneys who attack the competency of defense attorneys and the very defense employed in this case, that of causation of death. Ben Jones was beaten to death by this defendant. He died a week later as a result of the injuries he incurred from that brutal, sustained beating. And the only defense available was the one that was used. How did Ben Jones die? Whose fault was it? This was not a defense prepared at the eleventh hour. Such a statement is contrary to the record, and frankly, it's a little offensive. Dr. Shaqu Tease was hired and testified in this case. This was not a central aspect of a gang case. If this court and counsel would read the record, it would become painfully evident this case was an expert versus an expert, because that's what this case was all about. Ben Jones' testimony was properly admitted as an excited utterance. The passage of time of two hours does not obviate the evidentiary admission of this statement. As the people have pointed out in People v. House, there was a victim who was alive and conscious for two hours while she received medical treatment for burns. That statement was admissible in People v. Gaucho. A victim was locked in a car with a corpse for six and a half hours. That statement was admissible. Neither of those cases had the facts presented in our case an unconscious victim. The police officers in this case fortuitously found this victim unconscious on the ground after being beaten by Robert Dixon. He was not conscious when he was loaded into the ambulance. Counsel would have this court believe that this victim was alive and chatting and having tea with the medical personnel and the emergency room people. We have no idea if a consent to pay was a nod or a moan, and to state otherwise is absolutely incredible. The passage of time in this case with these facts are totally irrelevant. We don't know how much of the two hours our victim was unconscious, but in light of the fact that these police officers were standing at the emergency room door for if they had to meet an emergency on the street or if this was a specified attack is contrary to any claims made by this petitioner. Those statements were absolutely improperly admissible and frankly it doesn't even matter because let's remember what the defense was in this case. A defense tried by seasoned trial attorneys. Trial attorneys who understood that they needed to keep the jury's focus in one place. There is a saying at the state's attorney's office, never to chase the defense, and I would imagine the public defenders also have a similar mantra of not chasing the state's case. And in fact, this court has the benefit of public defender Bryce's statement at the third stage hearing. He specifically stated we didn't want to chase that gang thing. Both the public defender Woodbury and Bryce specifically and consistently testified we wanted them to keep their eyes on the prize. Causation of death. And they nearly succeeded. And we know that because the jury sent out a note. Can we find them guilty of first or second or third degree murder? They were going exactly where those public defenders wanted them to go. They had bought into that defense. Ultimately they convicted the defendant of first degree murder. That does not render their defense incompetent and frankly the state of public defender doesn't accuse that defense of incompetency. And not to accuse the very defense itself of being incompetent renders every argument before this court utterly senseless. It doesn't matter if they didn't ask about gang bias. It doesn't matter if that excited utterance came in. It had nothing to do with the defense of causation of death. Any seasoned, experienced trial attorney would know that. And indeed, you have the explanation of seasoned trial attorneys explaining that very issue to you. So it's your position that there was no basis upon which they could have objected to that testimony? Oh sure, there was a legal basis. And in fact, let's not forget, the public defender filed a motion to bar that testimony. But he said it was at the 11th hour. Sure it was. What difference does that make? Well it wouldn't have assisted with voir dire, would it? It didn't matter because the, actually I want to direct your attention to the voir dire. But answer that question. Would it have assisted in voir dire? Absolutely not. It would have been a distraction. Because getting the gang testimony out would have been only hurtful to the defendant. Because the facts show that the only gang members in this case were the defendant and his buddies. There's nothing in this record to show that the victim was a gang member. Why would a seasoned trial attorney, why would any attorney want to focus the jury away from causation of death into something that doesn't matter? That's only going to hurt their own clients. But isn't this court encouraged not to speculate on the strategies of trial attorneys? And you don't need to, your honor. You don't need to. It's been explained to you in a third stage hearing. Frankly, a hearing that never should have been held in the first place. Because there's no case law out there that says that the failure to question a jury about gang bias is ineffective. And in fact, every case supports the fact that that's a matter of sound trial strategy. But you have more than that in this case. You have two attorneys explaining to you, no, I wasn't going to ask about gang evidence. Why would I do something like that? They wanted to focus on the causation. They wanted the jury to keep their eyes on the prize. And that's precisely what they did. And in fact, with the record before this court, I don't even know if the trial court would have allowed a gang question to be asked. Under strain, the gang testimony has to be an integral part of the trial. In this case, it absolutely was not. In strain and in cases where gang testimony is allowed, those cases are replete with gang testimony. As in strain, every police officer who testified was qualified as a gang expert. Every piece of evidence had a gang tint. The only gang testimony that was brought in at this trial was to explain why was Ben Jones beaten to death? Because he wasn't supposed to tell the gang's business. And that's another reason why the doctrine of forfeiture should be applied in this case. It's much like a domestic violence case, which we illustrated in our brief. Gangs only survive because of fear and intimidation. And in fact, the front page of the Tribune today illustrates that very point in the slaying officer that was murdered last week along with that Chicago Public Housing Authority officer. I didn't come forward because of fear and retaliation. And that's exactly what the doctrine of forfeiture serves to prevent. The defendant was engaged in a conduct designed not only to prevent the testimony of the victim in this case regarding Little Tony in a drug case, but it was a threat. You don't tell our business. Not just with Little Tony, but ever. The code of silence is what allows the gangs to survive. That's the very type of testimony that the doctrine of forfeiture is designed to protect and in fact should be invoked in this case. Identity was never at issue in this case. He conceded that he beat the victim and in fact asked for an aggravated battering structure. And I'd like to focus the court's attention on a few things that the defense attorneys did do. They filed a motion to suppress. That's not an issue before this court. That is an argument made by defense counsel today to lure this court into something that's not before it. That argument should be stricken. It's not in a brief. It's res judicata, but he's using that argument to lure this court into using a different standard. The only standard before this court is Strickland v. Washington. We have had a third stage hearing on one issue and our motion to dismiss was granted on the other. This court is strictly confined to a Strickland v. Washington analysis. Not prejudicial error, not the weighing of the evidence, and that's an absolutely improper argument. People are asking that this court strike that. And frankly, the defendant's confession, according to the U.S. Supreme Court in Arizona v. Fulminati, is the most damning evidence against them, contrary to what counsel has told you earlier. The statements in this case were not testimonial. They were a quick question, what happened? Testimonial evidence is evidence that is designed to be presented in court, an affidavit, a police interrogation, something that will be used in court. And as noted in our brief, this is not testimonial evidence. Why not is not an interrogation. And all of the cases in Crawford and its progeny clearly show that the excited utterance hearsay exception is exempt from a testimonial analysis. And just briefly regarding the gang bias, the record is replete with evidence as to why the public did in fact, though, ask the gang or the jury, I'm sorry, about whether anybody had been admitted to Christ Hospital. This record shows a thoughtful, well-prepared, and consistent defense, a defense that nearly worked. For all of the reasons we stated in our brief and those here today, the people of the state of Illinois would ask that this honorable court affirm the decision made by Judge Crane and dismiss this post-conviction petition. Thank you, counsel. Mr. Roman, some brief rebuttal. Very briefly, Your Honor. May it please the court, counsel's argument casts more heat than light on this issue. There was very little in the way of legal analysis in anything that was just said. So I can respond very briefly that responding to her last legal point about testimonial hearsay, it's very clear under any of the controlling standards that this is testimonial hearsay. It's not limited to affidavits. It's certainly not limited to custodial interrogations. And in fact, the Crawford case itself involved facts highly analogous to this case. It involved police conversation with the witness hours after the event occurred. And again, in the Davis case, the Supreme Court made the distinction between a 9-11 call, which is an immediate response to an emergency, and again, a conversation with police officers hours after an event occurred. Any sort of investigation hours later, like the issue in this case, is very clearly testimonial. Counsel also suggested that we didn't attack the defense, and I would submit to the court that it's very clear throughout both of our briefs that our argument and indeed any argument of ineffective assistance of counsel attacks the defense. The defense they pursued was not the best available defense. It was not the only available defense. They pursued this defense because they didn't recognize that the testimonial hearsay statement was inadmissible, and that was clearly a mistake. Thank you, Your Honors. Thank you very much, Mr. O'Mahon. Let me compliment the attorneys on their briefs and their arguments. This matter will be taken under advisement in this court.